## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES MIRELES and CARMEN MIRELES, Husband and Wife, | ) ) ) |
| Plaintiffs, | ) ) |
| -vs- | ) ) Case No. CIV-21-843-F |
| LIBERTY INSURANCE CORPORATION, | ) ) ) |
| Defendant. | ) ) |

## **ORDER**

### I.

### *Background*

On January 16, 2019, the property of plaintiffs James Mireles and Carmen Mireles sustained wind and hail damage due to a storm.    The property was insured under a homeowners insurance policy issued by defendant Liberty Insurance Corporation.    Plaintiffs submitted a claim under the policy, and defendant, through its adjuster, estimated damage to plaintiffs property (tile ridge and gutters) in the amount of $748.62, which was substantially less than plaintiffs' deductible of $9,042 for wind and hail loss.    Consequently, no payment was issued to plaintiffs. Several months later, in July of 2019, the adjuster reinspected the property at plaintiffs' request.    Not finding any new storm damage, the adjuster's estimate remained unchanged.    Shortly thereafter, plaintiffs, through a retained appraiser, invoked the appraisal process.    In August of 2019, defendant agreed to participate in the appraisal process and selected an appraiser.    After conducting inspections, the parties' appraisers could not agree on a damage estimate.    In early November

2020, the matter was referred to an umpire mutually selected by the appraisers. Between November 2020 and February 2021, there was an issue as to the umpire's receipt of defendant's payment of his fees.   Payment was reissued by defendant in February of 2021.   Thereafter, on March 21, 2021, the umpire issued an appraisal award in the amount of $237,326.62.   The award included a full roof replacement for plaintiffs' dwelling and damage estimates for other structures.   Plaintiffs' appraiser also signed the award document.   In a letter dated April 23, 2021, defendant advised plaintiffs that it declined to recognize the umpire's award, but it instead chose to recognize its appraiser's damage estimate of $132,107.60.   After subtracting for excluded cosmetic damage, depreciation and plaintiffs' wind and hail loss deductible, defendant agreed to pay plaintiffs $19,223.44.   According to defendant, it mailed a check in the amount of $19,223.44 to plaintiffs.   Plaintiffs deny receiving the payment and contend no payment was made.   After receiving a request from plaintiffs' appraiser to pay the umpire's appraisal award, defendant, in a letter dated May 10, 2021, clarified its position that it had not accepted and was not bound by the umpire's appraisal award, but had agreed to resolve the insurance claim based upon its appraiser's damage estimate.

On August 2, 2021, plaintiffs commenced suit against defendant in the District Court of McClain County, State of Oklahoma, alleging claims of breach of contract and breach of the implied duty of good faith and fair dealing.   Defendant removed the case to this court based upon the existence of diversity jurisdiction, 28 U.S.C. § 1332.   Having conducted discovery, defendant has moved for summary judgment on plaintiffs' claims.   Defendant contends that plaintiffs' breach of contract claim is time-barred and substantively meritless, and that plaintiffs' claim for breach of the implied duty of good faith and fair dealing fails as a matter of law because it acted reasonably, and a legitimate dispute existed between the parties as to the amount of plaintiffs' insurance claim.   Even if plaintiffs' claim of breach of the implied duty

of good faith and fair dealing survives summary judgment, defendant contends it is entitled to summary judgment on plaintiffs' request for punitive damages.

Upon review of the parties' submissions related to Defendant Liberty Insurance Corporation's Motion for Summary Judgment (doc. no. 33), the court makes its determination.

II.

*Standard of Review*

Pursuant to Rule 56(a), Fed. R. Civ. P., a "party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."   Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Rule 56(a), Fed. R. Civ. P.   In conducting its review, the court views the evidence and draws reasonable inferences in a light most favorable to plaintiffs, the nonmoving parties.   Shotts v. Geico General Insurance Company, 943 F.3d 1304, 1314 (10th Cir. 2019).   Because the court's jurisdiction is based on the parties' diversity of citizenship, the court applies Oklahoma substantive law.   *Id*. at 1307 n. 4.

III.

*Analysis*

A.   Time Bar Defense for Breach of Contract Claim

Initially, defendant asserts that plaintiffs' breach of contract claim is barred by the two-year limitations period set forth in the policy.   According to the policy, "[n]o action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss." Doc. no. 33-1, ECF p. 36, ¶ 8.   It is undisputed that plaintiffs commenced this action more than two years after the date of loss on January 16, 2019.

Plaintiffs, however, contend that the limitations period was equitably tolled or waived by defendant's conduct or was extended by bulletins issued by the Oklahoma Department of Insurance/Oklahoma Insurance Commissioner due to the COVID-19 pandemic.   As to defendant's conduct, plaintiffs assert that defendant actively engaged in the appraisal process, without raising the limitations period, and offered to resolve the plaintiffs' claim for $19,223.44 because of that process.   With respect to the bulletins, plaintiffs assert that they extended plaintiffs' deadline to file suit against defendant until 90 days after the expiration of the Oklahoma Governor's state of emergency declaration caused by the impending threat of COVID-19.   Plaintiffs assert that the Governor's state of emergency declaration expired as of May 4, 2021, and they filed their lawsuit exactly 90 days later, on August 2, 2021.   Thus, plaintiffs maintain that their breach of contract claim is timely.

Although defendant challenges whether the subject bulletins constitute a binding form of law, the court need not address the issue.   Even if they had the force of law, the court concludes the language of the third and final bulletin issued by the Oklahoma Department of Insurance/Oklahoma Insurance Commissioner regarding COVID-19 defeats plaintiffs' contention.   The third bulletin, issued on June 18, 2020, stated that the "PC Bulletin 2020-01 (As Amended) will be effectively rescinded on June 30, 2020, except as provided[.]"   Doc. no. 42-9.   It then provided that the "term of extended grace periods" and the "term of extended claims reporting periods" "shall be allowed to expire upon reaching the end of the extension."   *Id*.   The only grace period referred to in the prior bulletin related to the "nonpayment of premiums," and it extended any applicable grace period by 45 days.   Doc. no. 42-8, ECF p. 2.   As to "claims reporting deadlines," the prior bulletin suspended all claims reporting deadlines for the duration of the emergency declaration.   *Id*., ECF p. 3.   This case presents no issues as to premium payments or claims reporting deadlines.   It is the limitations period for an action against

defendant which is at issue.    While the prior bulletin "extend[ed] all policyholder rights or benefits related to deadlines until 90 days after the state of emergency ends," *see*, *id*., the third bulletin did not mention anything about extending policyholder rights or benefits related to deadlines.    Thus, even assuming the reference to "policyholder rights or benefits related to deadlines" in the prior bulletin could be construed as including the limitations periods for actions by insureds, the third bulletin rescinded that extension as of June 30, 2020.    Consequently, the court concludes that plaintiffs cannot rely upon the subject bulletins to support an extension of the limitations period for 90 days after May 4, 2021, with respect to their breach of contract claim.

However, upon review of the record in a light most favorable to plaintiffs, the court concludes that a genuine issue of material facts exists as to whether defendant's conduct resulted in a waiver of the contractual limitations period.    In <u>Zewdie v. Safeco Insurance Company of America</u>, 304 F. Supp. 3d 1101 (W.D. Okla. 2018), Judge Joe Heaton set forth the law in Oklahoma on the issue of waiver with respect to the contractual limitations period.    Specifically, Judge Heaton stated:

> Beginning with its decision in <u>Prudential Fire Ins. Co. v. TraveTaylor Co.</u>, 194 Okla. 394, 152 P.2d 273, 275 (1944), the Oklahoma Supreme Court has repeatedly held that an insurer may waive a contractual limitations period imposed by an insurance policy if it leads the plaintiff by its conduct to believe the claim will be paid. Certain property belonging to the insured plaintiff in <u>Prudential</u> was damaged in a fire.    The adjustor retained by the insurer to establish the extent of the loss hired several experts to assess the property damage, but they did not complete their investigation until the limitations period was almost over.    They determined the property did not sustain any appreciable damage, but that information was not communicated to the insured until the limitations period had expired. The plaintiff sued and the insurer defended on the ground the lawsuit was filed after the contractual limitations period had ended. The Oklahoma Supreme Court concluded that under these circumstances

5

the defendant had waived the limitations period by not denying liability within enough time to permit the plaintiff to bring suit within the policy's limitations period.    The court stated that the waiver was "for a <u>reasonable time</u>" after the denial of liability.    *Id.* at 273 Syllabus ¶ 1 (emphasis added).

A similar conclusion was reached in <u>Agric. Ins. Co. v. Iglehart</u>, 386 P.2d 145 (Okla. 1963), where the plaintiff filed an action for breach of contract a year after the contractual limitations period had expired. The court noted that the defendant had "at no time denied liability to [the] plaintiff." *Id.* at 146. Rather, "[t]here was merely a continuing disagreement between the parties as to the amount of plaintiff's claim." *Id.* The court held that the defendant waived the policy's limitation provision "[i]n such a situation where defendant admitted liability to plaintiff, but never made payment to him on his claim, and there were intermittent negotiations for settlement of the claim." *Id.*

Waivers were also found in <u>Oklahoma Farm Bureau Mut. Ins. Co. v. Lay</u>, 398 P.2d 506 (Okla. 1965) and <u>National–Ben Franklin Ins. Co. v. McSwain</u>, 388 P.2d 501 (Okla. 1963).    In <u>Lay</u> there was evidence that the plaintiff had submitted a claim for a fire loss, was told by the insurer's agent that "he would have an adjuster come out 'and settle it up,'" and that the adjuster then came and informed him "'they would settle it, fix the house back.'"    <u>Lay</u>, 398 P.2d at 508.    The plaintiff testified that he did not file his lawsuit within a year after the loss because the adjuster told him "'he wanted to catch the guy that set it, and they would settle it with me, not to worry about it.'" *Id.*    According to the plaintiff, the "first time any representative of the defendant told him it was not going to pay the loss was in August, 1961." *Id.*    He testified he then contacted his attorney and caused the action to be filed, which occurred in September 1961. The Court stated that, although some of the crucial parts of the plaintiff's testimony were contradicted by defendant's witnesses, "there was evidence, which, if believed by the jury, furnished a basis for deciding . . . that plaintiff may have been lulled by defendant's conduct into delaying the commencement of this action more than a year after his loss, in the belief that defendant was going to settle with him without the necessity of taking such action." *Id.*

Similarly, in <u>McSwain</u> the Oklahoma Supreme Court concluded that the evidence was sufficient to demonstrate the insurer waived the one year limitations period.   It noted that the "[p]laintiff's testimony [was] clear that when she left for California in the Summer of 1957, she was made to believe by Mr. Mason, the defendant's agent, that repairs would be made upon the house in question."   <u>McSwain</u>, 388 P.2d at 503.   A contrary decision was reached in <u>Bernstein v. Connecticut Fire Ins. Co.</u>, 315 P.2d 232 (Okla. 1957) because "negotiations [had] been broken off in sufficient time to enable the insured to commence the action within the limitation period."   <i>Id</i>. at 233.   There the insurer had denied liability less than four months after the loss.   It had offered to compromise the claim, but the court stated the offer was "of no assistance to the plaintiff in establishing a waiver even if properly pleaded, for it affirmatively appears that the offer was in response to an inquiry of plaintiff's attorney."   <i>Id</i>.

The Tenth Circuit addressed the waiver/statute of limitations issue in <u>Ins. Co. of North America [v. Board of Ed. of Independent School Dist. 12, Texas</u>, 196 F.2d [901,] 902–04 [(10th Cir. 1952].   In that case the trial court had rejected the defendant insurer's argument that the action was barred by the applicable one year limitations period, concluding that its inequitable conduct deprived it of the defense.   It found the insurer, "by its dilatory tactics, and by continuing to negotiate with the [insured] for a settlement of the claim into February, 1948, and not finally denying liability until in April, 1948," after the limitations period had expired, "misled the [insured] into believing the loss would be adjusted."   <i>Id</i>. at 902.   The insured had filed suit more than thirty months after the damage occurred and approximately sixteen months after the insurer denied liability.

The Tenth Circuit recognized that many courts used the term waive or waiver in this context, but determined that "these words are loosely and inaccurately treated when so used."   <i>Id</i>. at 903.   It interpreted Oklahoma law to hold that an insurer in this situation does not actually "waive" its right to assert the limitations period in the sense of "a complete relinquishment, extinguishment and abandonment" of the right to assert the limitations period.   <i>Id</i>. at 904.   Instead, it concluded that conduct such as what the insurer had allegedly engaged in there, "operate[d] to suspend the running of the statute of limitations until denial of liability and that thereafter the

statute begins to run again and, if insufficient time remains to institute the action within the year, the insured may have a reasonable time thereafter to bring action."   *Id.*

Zewdie, 304 F. Supp. 3d at 1108-1110.

In this case, defendant did not deny plaintiffs' insurance claim.   It agreed plaintiffs' property sustained wind and hail damage but estimated that damage as substantially less than plaintiffs' deductible for wind and hail loss. After defendant's second inspection of plaintiffs' property and decision not to change its original damage estimate, plaintiffs invoked the appraisal process.   The policy issued to plaintiffs contained an endorsement in accordance with Oklahoma law which stated:

> If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal of the loss.   *In this event, only the party which demanded the appraisal will be bound by the results of that appraisal.*   Each party will choose a competent appraiser within 20 days after the written demand has been made.   The two appraisers will choose an umpire . . . The appraisers will separately set the amount of loss.   If the appraisers submit a written report of agreement to us, the amount agreed upon will be the amount of loss and *will be binding on that party which demanded the appraisal.*   If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss and *will be binding on that party which demanded the appraisal.*

Doc. no. 33-1, ECF p. 36, ¶ 6 (emphasis added).

In responding to plaintiffs' request for appraisal, defendant advised that it was "acting upon the request in like fashion as dictated within the policy."   Doc. no. 43-2, ECF p. 36.   It then advised plaintiffs of what their policy stated with respect to appraisal.   However, it did not quote the correct language from plaintiffs' policy. Rather, it stated that plaintiffs' policy provided as follows:

> If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss.   In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a

written request from the other.   The two appraisers will choose an umpire . . . The appraisers will separately set the amount of loss.   If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.   If they fail to agree, they will submit their differences to the umpire.   A decision agreed to by any two will set the amount of loss.

Each party will:
1.  Pay its own appraiser; and
2.  Bear the other expenses of the appraisal and umpire equally.

*Id*. (emphasis omitted).

The language quoted by defendant did not indicate that only the plaintiffs, as the parties invoking the appraisal, would be bound by results of the appraisal.   The language instead indicated that the amount of loss would be determined by the amount agreed upon by the appraisers or by a decision of any two if the parties submitted their differences to the umpire.   And the letter then advised the plaintiffs of defendant's appointed appraiser.   The letter further advised the plaintiffs "to take no action toward repairing the damage or otherwise spoiling any evidence until such time as any differences have been resolved."   *Id*., ECF p. 37.   Although the letter, after the adjuster's signature, contained a sentence stating that the letter "should not be construed as a waiver or estoppel of the terms, conditions or defenses afforded by the policy or applicable law," the letter did not indicate to which "policy or applicable law" it was referring.   *Id*.   As stated, the language quoted in the letter was not from plaintiffs' policy.   Further, the letter did not contain any language specifically advising the plaintiffs that defendant denied liability or that it reserved its rights to deny liability.

The appraisal process commenced in July of 2019, and the umpire did not issue his appraisal award until March 2021, approximately two months after expiration of the two-year limitations period.   The record does not reflect that the defendant indicated to the plaintiffs at any time during the appraisal process that they

would still be bound by the two-year limitations period, despite the pendency of the appraisal process.   The record does contain a reservation of rights letter dated May 1, 2020, from defendant's adjuster that was addressed and emailed to plaintiffs' appraiser, *see*, doc. no. 43-2, ECF p. 43, almost a year after the appraisal process was invoked, an initial inspection by the plaintiffs' appraiser had commenced, and an umpire had been agreed to by the parties.   Although Mr. Mireles was copied on the email, there is no evidence in the record that plaintiffs received or were made an aware of that letter.   Moreover, defendant's adjuster advised that the purpose of the reservation of rights letter was to "indicate that we are still in appraisal prep stages and await progress."   Doc. no. 43-2, ECF p. 41.

On April 23, 2021, over a month after the umpire issued his appraisal award, defendant advised that it was not recognizing the award, and that under Oklahoma law, it did not have to abide by the award because it had not initiated the appraisal process.   However, it also advised plaintiffs that it would recognize its own appraiser's estimate and, after subtracting for excluded cosmetic damage, depreciation and the wind and hail loss deductible, agreed to pay plaintiffs a sum of $19,223.44.   After receipt of a request from plaintiffs' appraiser to pay the umpire's appraisal award, defendant sent a letter dated May 10, 2021, clarifying its position that it was agreeing to resolve plaintiffs' claim based upon its own appraiser's damage estimate.   Plaintiffs filed their action less than three months later, on August 2, 2021.

The court concludes that a reasonable juror could conclude that defendant's words and conduct in response to plaintiffs' appraisal request and during the appraisal process waived the limitations period in plaintiff's policy.   The court also concludes that a reasonable juror could conclude that plaintiffs' action, filed less than three months after defendant's May 10, 2021 letter, was filed within a reasonable time.

In its reply, defendant, quoting from <u>Trinity Baptist Church v. GuideOne Elite Ins. Co.</u>, 654 F. Supp. 2d 1316, 1321 (W.D. Okla. 2009), asserts that where "Plaintiff [is] not legally prevented from filing suit, the pendency of the appraisal process [does] not toll the running of the statute of limitations."   Doc. no. 48, ECF p. 4. According to defendant, "[n]o one at Liberty told Plaintiffs that the two-year period was tolled, much less 'legally prevented them' from filing suit."   *Id*. at ECF p. 5. However, <u>Trinity</u> is factually distinguishable from this case because the appraisal provision at issue in <u>Trinity</u> stated:   "If there is an appraisal, we will still retain our right to deny the claim."   <u>Trinity</u>, 654 F. Supp. 2d at 1321.   Judge Timothy DeGiusti determined that under Oklahoma law, the insured had no obligation to await the conclusion of the appraisal process to file suit because the appraisal provision reserved the question of liability for later decision.   *Id*.   Thus, Judge DeGiusti concluded the appraisal process was not a condition precedent for the insured to file suit under the policy and thus did not toll the running of the limitations period.

Here, plaintiffs' appraisal provision as well as the (erroneously quoted) appraisal provision relied upon by defendant in agreeing to commence the appraisal process did not contain any denial of liability or any reservation of the issue of liability by defendant.   And in response to plaintiffs' appraisal request, defendant did not deny liability or reserve the issue of liability.   The court concludes that the <u>Trinity</u> decision does not preclude a finding by a reasonable jury that defendant's conduct with respect to the appraisal process waived the contractual limitations period.

B.   <u>Merits of Breach of Contract Claim</u>

Defendant challenges plaintiffs' breach of contract claim as substantively meritless.   Upon review of the record in a light most favorable to plaintiffs, the court concludes that genuine issues of material fact exist as to whether defendant

breached the insurance policy.   *See*, Digital Design Group, Inc. v. Information Builders, Inc., 24 P.3d 834, 843 (Okla. 2001) (one of the three elements of a breach of contract claim is "breach of the contract").   One of those genuine issues of material fact is whether defendant issued or mailed a check to plaintiffs for $19,223.44, the amount defendant agreed was owed to them under the policy.

C.      Breach of Implied Duty of Good Faith and Fair Dealing Claim

Defendant also challenges plaintiffs' claim for breach of the implied duty of good faith and fair dealing, also known as a bad faith claim.   A jury may decide the issue of an insurer's bad faith if there is evidence that the insurer failed to adequately investigate the insured's claim.   *See*, Bannister v. State Farm Mut. Auto. Ins. Co., 692 F.3d 1117, 1128 (10th Cir. 2012); *see also*, Buzzard v. Farmers Ins. Co., Inc., 824 P.2d 1105, 1109 (Okla. 1991) ("To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances.").   Under Oklahoma law, the insurer's investigation of the insured's claim need only be reasonable, not perfect. Shotts, 943 F.3d at 1317. Consequently, when a bad faith claim is premised on an inadequate investigation, the insured must make a showing "'that material facts were overlooked or that a more thorough investigation would have produced relevant information' that would have delegitimized the insurer's dispute of the claim." *Id*. (quoting Bannister, 692 F.3d at 1128, quoting Timberlake Const. Co. v. U.S. Fidelity and Guar. Co., 71 F.3d 335, 345 (10th Cir. 1995)).   The evidence of inadequate investigation must "'suggest a sham defense or an intentional disregard of uncontrovertible facts[.]'" *Id*.

Based upon the record before it, viewed in plaintiffs' favor, the court concludes that there is evidence from which a reasonable jury could conclude that defendant's adjuster's two investigations of plaintiffs' claim, which resulted in a damage estimate of $748.62, were not reasonable under the circumstances.   Indeed,

defendant's own appraiser estimated wind and hail damage to plaintiffs' property in the amount of $132,107.60, of which $18,937.99 alone was for plaintiffs' home roof and $1,636.10 was for other items related to plaintiffs' home.   The evidence, viewed in plaintiffs' favor, suggests that material facts were overlooked or that a more thorough investigation would have produced relevant information that would have delegitimized the insurer's dispute of the claim.   It also suggests a sham defense or an intentional disregard of unconvertible facts.   Therefore, the court concludes that a genuine issue of material fact exists as to plaintiffs' bad faith claim based upon an inadequate investigation of their insurance claim.

Additionally, the court concludes that plaintiffs have raised a genuine issue of material fact as to whether defendant acted in bad faith in failing to promptly pay plaintiffs $19,223.44, the amount it agreed it owed under the policy.   "In Oklahoma, 'a claim must be paid promptly unless the insurer has a reasonable belief the claim is legally or factually insufficient.'"   Shotts, 943 F.3d at 1316 (quoting Barnes v. Oklahoma Farm Bureau Mut. Ins. Co., 11 P.3d 162, 171 (Okla. 2000)); see also, Buzzard, 824 P.2d at 1109.   The evidence in the record, viewed in a light favorable to plaintiffs, is sufficient for a reasonable jury to find defendant acted unreasonably in failing to promptly pay plaintiffs the amount it agreed plaintiffs were owed for their insurance claim.

D.   Punitive Damages

Lastly, defendant seeks summary judgment on plaintiffs' request for punitive damages on their bad faith claim.   Plaintiffs have not responded to defendant's motion as to this issue.   The court in its discretion deems the issue confessed.   See, LCvR 7.1(g).   Upon independent review, the court finds that summary judgment is appropriate.

Under Oklahoma law, "the availability of punitive damages in a case by an insured against his/her insurer for breach of the implied duty of good faith and fair

dealing is not automatic, but rather is governed by the standard applicable in other tort cases." <u>Badillo v. Mid Century Ins. Co.</u>, 121 P.3d 1080, 1106 (Okla. 2005). "[F]or punitive damages to be allowed there must be evidence, at a minimum, of reckless disregard toward another's rights from which malice and evil intent may be inferred." *Id*. (emphasis omitted).

Upon review of the record in a light most favorable to plaintiffs and acknowledging the higher standard of clear and convincing evidence that plaintiffs must satisfy, the court concludes that there is not competent evidence upon which a reasonable jury could find reckless disregard, from which malice and evil intent by defendant may be inferred.   Therefore, the court concludes that defendant should be granted summary judgment on plaintiffs' request for punitive damages with respect to their breach of the implied duty of good faith and fair dealing claim.

IV.

*Conclusion*

For the reasons stated, Defendant Liberty Insurance Corporation's Motion for Summary Judgment (doc. no. 33) is **GRANTED in part** and **DENIED in part**. This case shall proceed to trial on the April jury trial docket on plaintiffs' breach of contract and breach of the implied duty of good faith and fair dealing claims. Plaintiffs' request for punitive damages with respect to their breach of the implied duty of good faith and fair dealing claim will not be submitted to the jury.

DATED this 20th day of January, 2023.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

21-0843p011.docx